**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | | |
|---|---|---|
| JUSTIN K. PETERS, <br> 9615 Meadow Flowers Court <br> Laurel, MD 20723 <br>       Plaintiff, <br> <br> v. <br> <br> EQUIFAX INFORMATION SERVICES, LLC, <br> 1550 Peachtree Street, NW <br> Atlanta, GA 30309 <br> <br> Serve:  CSC-Lawyers Incorporating Service Co. <br>     7 St. Paul Street <br>     Suite 280 <br>     Baltimore, MD 21202 <br> <br> and <br> <br> EXPERIAN INFORMATION SOLUTIONS, INC., <br> 505 City Parkway West <br> Orange, CA 92668 <br> <br> Serve:  The Corporation Trust Incorporated <br>     2405 York Road, Suite 201 <br>     Lutherville Timonium, MD 21093 <br> <br>       Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil Action No. 8:17-cv-2686 |

**COMPLAINT**

COMES NOW the Plaintiff, Justin K. Peters ("Plaintiff"), by counsel, and for his Complaint against the Defendants, he alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages, costs, and attorneys' fees brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA").

2. Equifax and Experian, two of the "Big 3" consumer reporting agencies, both have a long history of consumer complaints and lawsuits alleging (and establishing) that they unreasonably mixed the credit files and information of one consumer with the credit reports of another consumer. In this case, representative of numerous others, Equifax and Experian combined or mixed the credit files of the Plaintiff with a complete stranger with a similar name, resulting in a collection's account appearing in Plaintiff's credit report that belonged to someone else.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

4. Plaintiff is a natural person residing in Maryland, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. §1681a(c).

5. Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company authorized to do business in Maryland.

6. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

7. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation authorized to do business in Maryland.

8. Experian is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing

information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

## FACTS

9. In April 2017, Plaintiff applied for a mortgage loan with Loandepot.com, LLC.

10. At this time, Plaintiff learned that Equifax and Experian were reporting inaccurate information in his credit report.

11. For example, both Equifax and Experian were reporting that Plaintiff had a collection account with Enhanced Recovery Collections for a DirecTV account with an outstanding balance of $625.

12. This information was inaccurate—Plaintiff has never had a delinquent DirecTV account.

13. When the Plaintiff learned of Equifax's and Experian's inaccurate reporting, he contacted DirecTV for more information about the account. DirecTV told the Plaintiff that the account originated from charges made in California for another Justin Peters who had filed for bankruptcy in 2014.

14. Plaintiff has never lived in California, nor has he ever received DirecTV services at a California address. He also had never filed for bankruptcy.

15. This derogatory item severely reduced the Plaintiff's credit score and caused him to be denied for a mortgage.

16. As a result of this negative credit reporting, Plaintiff suffered actual damages.

### Equifax's Double Standard and Willful Misconduct

17. Equifax has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

18.     While Equifax claims that partial matches are reasonable because of possible creditor transcription error – a theoretical typo transposing two social security digits – Equifax does not possess any actual research or data to support its contrived risk of error.

19.     In contrast, Equifax has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

20.     As early as 1992, the Attorneys General of eighteen states were forced to file a lawsuit against Equifax because of its conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the attorneys general relating to Equifax's responsibilities to prevent mixed files.

21.     Only three years after the Agreement of Assurances, the Federal Trade Commission ("FTC") brought another enforcement action due to Equifax's widespread violations of the FCRA, including the creation of mixed files and then furnishing them to users who did not have a permissible purpose to view the information of the consumer. *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995). This enforcement action resulted in a consent order between Equifax and the FTC that sets forth certain procedures to prevent mixed files and to conduct reinvestigations as required by the FCRA.

22.     Despite the 1992 Agreement of Assurances and the 1995 Consent Order, Equifax's computer system causes these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present.  It does this in order to sell more credit reports.

23.     Equifax knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".

24. Equifax has been sued repeatedly for failing to prevent mixed consumer files, including the $18.6 million verdict on July 26, 2013 in *Miller v. Equifax Information Services, LLC*, 3:11-cv-1231 (D. Or. 2011) (Docket No. 79).

25. The recent verdict from Oregon is not the only multi-million dollar verdict against Equifax in a mixed file case. In November 2007, a jury found in favor of another consumer with a mixed file and awarded her $219,000 in actual damages and $2.7 million in punitive damages. *Williams v. Equifax Information Solutions, LLC*, No. 48-2003-CA-9035-O (Orange County 2007).[1]

26. These cases are representative of numerous other lawsuits around the country where Equifax has been sued for failing to prevent mixed consumer files. *See, e.g.*, *Apodaca v. Discover Financial Services*, 417 F. Supp. 2d 1220 (D.N.M. 2006).

27. Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought in this Circuit. *See e.g.*, *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info Servs.*, 510 F.3d 495 (4th Cir. 2007); *Abraham Lopez, Jr., v. Trans Union, LLC,* Civil Action No. 1:12-cv-902 (E.D. Va. 2012); *Alejandro Lopez, Sr. v. Trans Union, LLC*, Civil Action No. 1:12cv1325 (E.D. Va. 2012); *Chaudhary v. Experian Info. Solutions, Inc.*, Civil No. 3:13-cv-577 (E.D. Va. 2013); *Valdez-Estep v. Equifax Info. Servs.*, Civil No. 1:13-cv-00007 (E.D. Va. 2016); *Kang v. Equifax Info. Servs.*, Civil No. 1:15-cv-01406 (E.D. Va. 2015); *Moulvi v. Equifax Info. Servs.*, Civil No. 1:15-cv-01073 (E.D. Va. 2015); *Barclay v. Equifax Info. Servs.*, Civil No. 1:15-

---

[1] Consumer Victory: Equifax Must Pay $ 2.9 million for Mixing Up Credit Files, The Consumer Advocate, Vol. 14, No. 1, National Association of Consumer Advocates (Jan.-Mar. 2008), at 14; Consumer Wins Fight For Credit Report Accuracy, Privacy Times, Dec. 6, 2007.

cv-00691 (E.D. Va. 2015); *Robinson-Huntley v. Equifax Info. Servs.*, Civil No. 1:15-cv-00626 (E.D. Va. 2015).

28. Equifax knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

29. Despite these lawsuits and multi-million dollar verdicts, Equifax has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

30. Upon information and belief, Equifax has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

31. Accordingly, Equifax's violation of 15 U.S.C. § 1681e(b) was willful and Equifax is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

32. Equifax's failure to modify its procedures caused substantial harm to the Plaintiff.

**Experian's Double Standard and Willful Misconduct**

33. Experian has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

34. As early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991). In settling the enforcement action brought by the AGs, Experian agreed to make the following practice changes:

6

1. ***Maintain reasonable procedures to prevent the occurrence or reoccurrence of Mixed Files***,[2] including but not limited to:

a. Continuing its current efforts to improve its information gathering, storing, and generating systems ***to reduce the occurrence of Mixed Files***, through modification of its software system to enable such system to accommodate and use, for matching and identification purposes, a Consumer's Full Identifying Information;[3] and

b. Not later than July 31, 1992, implementing and utilizing changes to its system designed to prevent, to the extent it reasonably can, the reoccurrence of Mixed Files, once known;

…

iv. Employing reasonable procedures designed specifically ***to reinvestigate disputes from Consumers that result from Mixed Files***.

…

For the five (5) year period following the entry of [the Consent Order], [Experian] shall measure, monitor, and test the extent to which changes in [Experian's] computer system, including its algorithms, reduce the incidence of Mixed Files.

*FTC*, 784 F. Supp., 362-364 (N.D. Texas 1991).

35. Similarly, another enforcement action was brought against Experian by nineteen state attorneys general that resulted in a similar consent order as described in the previous paragraphs, including the procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files. *See TRW, Inc. v. Morales*, Civil Action No. 3-91-1340-H (N.D. Tex. 1991).

36. Despite the consent orders with the FTC and the Attorneys General, Experian's computer system causes these mixes because it does not require or use full identifying

---

[2] Mixed File is defined in the Consent Order as a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report. *Id*. at 362.
[3] Full Identifying Information is defined in the Consent Order as full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number. *Id*.

7

information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. It does this in order to sell more credit reports.

37. Experian knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".

38. Experian has been sued repeatedly for failing to prevent mixed consumer files. *See, e.g., Calderon v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Information Solutions, Inc.*, Civil Action No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Solutions*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian*, et al., Case No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Solutions, Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001).

39. Experian knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

40. Despite these lawsuits, Experian has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

41. Upon information and belief, Experian has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

42. Accordingly, Experian's violation of 15 U.S.C. § 1681e(b) was willful and Experian is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

43. Experian's failure to modify its procedures caused substantial harm to the Plaintiff.

**COUNT ONE:**
**(Violation of 15 U.S.C. § 1681e(b))**
**(EQUIFAX AND EXPERIAN)**

44. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

45. The Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning the Plaintiff.

46. As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

47. The Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

48. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and his attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**.

> Respectfully Submitted,
> **JUSTIN K. PETERS**
>
> By: */s/ Kristi C. Kelly*
>       Counsel

Kristi Cahoon Kelly, Esq. (No. 07244)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail:  kkelly@kellyandcrandall.com

*Counsel for Plaintiff*